JOURNAL ENTRY AND OPINION.
{¶ 1} The defendant-insurer, Federal Insurance Company ("Federal"), appeals from a common pleas court decision granting summary judgment in favor of plaintiff Sheri Renter, both individually and as administratrix of the estate of Jonzel Renter, Sr., on her claims for underinsured motorists coverage under two policies Federal issued to her employer, National City Corporation. Renter has cross-appealed the court's determination that resident family members are not insured under one of these policies, and that a third policy is not subject to R.C.3937.18.
 {¶ 2} We find genuine issues of material fact precluded summary judgment on the question whether National City validly rejected UM/UIM coverage under the business auto policy before the occurrence at issue. Therefore, we must reverse and remand for further proceedings on this issue. However, we agree with the common pleas court that the integrated risk policy was an automobile liability or motor vehicle liability policy as to which Federal did not offer uninsured/underinsured motorist ("UM/UIM") coverage, so that such coverage was provided by operation of law. We also agree with the common pleas court that plaintiff was an insured under the integrated risk policy but the decedent was not. Finally, we agree with the common pleas court that the general liability policy was not an automobile liability policy, and as a result, Federal was not obligated to offer UM/UIM coverage and no such coverage was included in the policy. For these reasons, we affirm in part, reverse in part and remand for further proceedings.
Factual and Procedural Background
 {¶ 3} On April 21, 2000, plaintiff's decedent was struck by a vehicle driven by Eric D. Anthony as the decedent stood next to a stranded vehicle which he had stopped to assist on an exit ramp of Interstate 90 in Lakewood, Ohio. Plaintiff's decedent died as a result of his injuries.
 {¶ 4} Anthony's vehicle was insured by Progressive Auto Insurance, with liability limits of $12,500 per person and $25,000 per accident. The vehicle the decedent was driving was owned by the decedent's employer, and was insured by Nationwide Mutual Insurance Company, with UM/UIM coverage of $250,000. Plaintiff also had a personal automobile liability policy issued by Guide-One Elite Insurance Company, which had UM/UIM coverage limits of $100,000 per person, and $300,000 per accident.
 {¶ 5} Plaintiff, the decedent's wife, was employed by National City Corporation at the time of the accident. National City carried several insurance policies with Federal, including a business auto policy, an integrated risk policy, and a general liability policy.
 {¶ 6} Plaintiff originally filed this action against the tortfeasor on July 24, 2000. She subsequently amended the complaint to name Federal, Guide-One, Nationwide and several other insurers as defendants. With respect to Federal, plaintiff sought a declaratory judgment that Federal provided UIM coverage and/or medical payments coverage under the policies it issued to National City. Both plaintiff and Federal moved for summary judgment as to the coverage afforded by each policy. On October 15, 2002, the common pleas court granted in part and denied in part each party's motion.
 {¶ 7} In its 24-page journal entry and opinion, the common pleas court first determined that National City was not self-insured as a practical matter, precluding Federal's argument that it had no obligation to offer UM/UIM coverage. Furthermore, the court found the business auto policy which Federal issued to National City afforded UM/UIM coverage by operation of law to both plaintiff and her decedent because the rejection form for such coverage was inadequate. The court held that the business auto policy also provided medical payments coverage to both plaintiff and her decedent.
 {¶ 8} The common pleas court determined that the integrated risk policy broadened the coverage afforded under the business auto policy and therefore was itself an automobile liability policy as to which the insurer was required to offer UM/UIM coverage. Because the insurer failed to offer such coverage, the court found the coverage was provided as a matter of law. However, the court found that this coverage only extended to plaintiff individually, as an employee of National City, and not to the decedent as a family member.
 {¶ 9} Finally, the common pleas court found that the general liability insurance policy issued by Federal to National City was not an automobile liability insurance policy and therefore Federal was not required to offer UM/UIM coverage under that policy. The court expressly determined there was no just cause for delay, and thus entered final judgment as to plaintiff's claims against Federal.
The Policy Terms
 Business Auto Policy
 {¶ 10} The business auto policy contained an Ohio uninsured motorists coverage endorsement which provided bodily injury coverage of $25,000 per accident. Federal conceded that both plaintiff and the decedent were insured under this endorsement, but argued that National City had rejected the coverage. In support of this contention, Federal provided the court with a copy of a form which stated:
"UNINSURED/UNDERINSURED PROTECTION — OHIO
"Your policy has been issued with Uninsured/Underinsured Motorists limits equal to your Bodily Injury Liability Limits. If you desire to reject the coverage entirely or choose a lower limit of Uninsured/Underinsured Motorist coverage, please check (X) the appropriate box and return this form to your insurance agent or broker.
" X I reject Uninsured/Underinsured Motorists Protection
" I select the following lower limits of Uninsured/Underinsured Motorist Protection.
" * * *
"The above selection shall apply to the current policy and all future renewals unless advised otherwise in writing by the named insured.
"Signature of Named Insured: __/s/ Elizabeth A. Hagman, VP
National City Corp., et al.
"Policy No. _(99) 7322-75-23 MTO
"Date ___4-30-98"
 {¶ 11} The business auto insurance policy also contained a medical payment endorsement which provided that Federal would pay "reasonable expenses incurred for necessary medical and funeral services to or for an `insured' who sustains `bodily injury' caused by `accident.'" Insureds included "you, while `occupying,' or while a pedestrian, when struck by any `auto,'" and "if you are an individual, any `family member' while `occupying' or, while a pedestrian, when struck by any `auto.'"
General Liability Policy
 {¶ 12} The general liability policy provides that Federal "will pay damages the insured becomes legally obligated to pay" because of "bodily injury" caused by an "occurrence." The policy excludes coverage for injury "arising out of the ownership, maintenance, use or entrustment to others of any" auto which the insured owns or operates. However, this exclusion does not apply to "liability for any insured arising out of the parking of an auto on or next to your premises; provided such auto is not owned by, rented or loaned to such insured."
Integrated Risks Policy
 {¶ 13} The integrated risks policy provides that Federal "agrees to pay on behalf of or indemnify the Insured for all sums, subject to the Maintenance Amount and the Retention, as a result of or in connection with a Loss anywhere, which fall under any of the" listed coverages. The listed coverages include, e.g., "Third Party Liability when Discovered
during the Policy Period."
 {¶ 14} The policy defines "third party liability" as "any liability of the Insured arising out of a Claim the Insured is obligated to pay by reason of liability imposed upon the Insured by law or in equity * * *, including" personal injury, physical injury, and "the use, possession, repossession or ownership of an Automobile * * *."
 {¶ 15} The integrated risks policy further provides:
"Fronted Insurance Policies are policies written for the Named Insured by the Company as shown on Schedule C. This policy will drop down and provide broader coverages as provided under this policy over the fronted policies and the fronted policies will be subject to the Limit of Liability of this policy. The Maintenance Amount and Retention will apply to any Loss paid by the fronted policies regardless of any deductible or retention, if any, shown on the fronted policies."
The business auto policy is listed on Schedule C.
Law and Analysis
 {¶ 16} We review de novo the common pleas court's decision on summary judgment, employing the same standard the common pleas court used to determine whether summary judgment was appropriate. Summary judgment is appropriate only if (a) there is no genuine issue as to any material fact that remains to be litigated, (b) viewing the evidence in the light most favorable to the party opposing the motion, reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-movant, and (c) the moving party is entitled to judgment as a matter of law. See, e.g., Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327.
 {¶ 17} Federal's first assignment of error challenges the common pleas court's grant of summary judgment for plaintiff on the business auto policy; the second challenges the court's grant of summary judgment on the integrated risks policy. Plaintiff's cross appeal challenges the court's determination that the decedent was not insured under the integrated risks policy, and that the general liability policy was not an automobile liability policy as to which Federal was required to provide UM/UIM coverage. We address each of these arguments separately below.
A. Business Auto Policy
1. Is National City Self-Insured?
 {¶ 18} Federal first argues that the common pleas court erred by holding that National City was not self-insured as a practical matter. The uninsured motorist provisions of R.C. 3937.18 do not apply to a self-insured entity. Grange Mut. Cas. Co. v. Refiners Transport Terminal Corp. (1986), 21 Ohio St.3d 47, syllabus. Thus, Federal argues, if we find that National City was self-insured, Federal was not required to offer uninsured motorist coverage to it.
 {¶ 19} This argument misses the mark. The issue whether a party is self-insured is only relevant if no offer of UM/UIM coverage was made, so that coverage must be implied by operation of law if it is to exist at all. Here, the Federal business auto policy was actually issued with a UM/UIM endorsement, which National City purportedly rejected the day before the policy became effective. Thus, the question whether UM/UIM coverage was statutorily mandated appears to be irrelevant; Federal actually provided the coverage.
 {¶ 20} Accordingly, we reject Federal's assertion that it was not required to provide UM/UIM coverage because National City was self-insured in the practical sense.
2. Was National City's Rejection of UM/UIM Coverage Valid?
 {¶ 21} Federal next contends that the common pleas court erred by finding that National City did not validly reject UM/UIM coverage under the business auto policy.
 {¶ 22} An insurer must make an express written offer of UM/UIM coverage in order for the insured to expressly, knowingly reject such coverage. Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565, paragraph one of the syllabus. To satisfy the offer requirement of R.C. 3937.18(A), an insurer must inform the insured, in writing, of the availability of UM/UIM coverage, set forth the premium for that coverage, include a brief description of the coverage, and expressly state the policy limits for UM/UIM coverage. Linko v.Indemnity Ins. Co. (2000), 90 Ohio St.3d 445, 447-48. The supreme court has recently held that the requirements of Linko continue to apply with respect to an offer and rejection of UM/UIM coverage, even after the amendments to R.C. 3937.18 set forth in Am. Sub. HB 261, which are applicable to the present case. Kemper v. Michigan Miller Mut. Ins. Co.,98 Ohio St.3d 162, 2002 Ohio 7101.[1]
 {¶ 23} There is no evidence in the record that Federal made a written offer of UM/UIM coverage to National City. The common pleas court relied on this fact to find that National City did not validly reject UM/UIM coverage. However, the court did not address the fact that the policy issued by Federal actually included a UM/UIM endorsement. In light of the actual inclusion of UM/UIM coverage in the policy, the existence of a written offer of coverage is unnecessary. The policy itself includes all of the information which Linko requires the insurer to provide in a written offer, so that National City could make an informed decision whether to accept or reject that coverage.
 {¶ 24} Nevertheless, there is a genuine issue of material fact as to whether National City rejected the UM/UIM coverage included in the policy, and if so, when. There is evidence in the record that the person who signed the rejection form, Elizabeth Hagman, was actually a vice president of National City Bank, not of National City Corporation, the named insured on the policy. If this is true, she may not have had the authority to reject coverage on National City Corporation's behalf, and as a result, the rejection may be invalid. There is further evidence in the record that a Thomas Richlovsky also signed the form on National City's behalf some time after Hagman did, but it is not clear when he did so.[2] This evidence creates genuine issues of material fact which preclude summary judgment on the question whether National City Corporation validly rejected UM/UIM coverage before the occurrence at issue.
 {¶ 25} In light of the common pleas court determination that National City did not validly reject UM/UIM coverage because no written offer of coverage was made, the court did not address the effect of the issuance of the policy with a UM/UIM endorsement, or the effect of the alleged rejection. Accordingly, we must reverse the court's holding on this matter and reverse and remand for further proceedings on the question whether the National City validly rejected UM/UIM coverage before the occurrence at issue here.
 {¶ 26} Federal also argues that the court erred by finding that plaintiffs were entitled to UM/UIM coverage. Having found a genuine issue as to whether National City validly rejected the coverage expressly included in the policy, we need not address this issue.
3. Medical Payments Coverage.
 {¶ 27} Federal contends that the common pleas court erred by finding that the decedent was an insured entitled to medical payments coverage under the business auto policy. The common pleas court determined that, although Scott-Pontzer is not directly applicable to the construction of medical payments coverage (which is not statutorily mandated), the rationale of Scott Pontzer is equally applicable here. Therefore, the court found, the parties must have intended to include employees among the insureds. Family members of individual insureds are afforded medical payments coverage under the express terms of the policy, either "while `occupying' or, while a pedestrian, when struck by any `auto.'" Therefore, the court held, the decedent was entitled to medical payments coverage.
 {¶ 28} The express terms of the medical payments coverage states that Federal will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains bodily injury caused by an accident. The term "insured" is defined as you and "if you are an individual, any `family member'" while occupying or, while a pedestrian, when struck by, any auto. Elsewhere in the policy, the term "you" is defined as the named insured. An endorsement lists as named insureds National City Corporation and its various corporate subsidiaries. Thus, the persons explicitly covered under this portion of the policy are corporations.
 {¶ 29} We agree with the common pleas court that the medical payments coverage would be illusory if it were limited to coverage of the named insured corporations, which cannot suffer bodily injury. Cf. Lakotav. Westfield Ins. Co. (1998), 132 Ohio App.3d 138, 143; State Auto Ins.Co. v. Golden (1998), 125 Ohio App.3d 674, 678 (insurance contract is not illusory if insured obtains some benefit). Following the reasoning of the Supreme Court in Scott-Pontzer, 85 Ohio St.3d at 664, "naming the corporation as the insured is meaningless unless the coverage extends to some person or persons — including the corporation's employees."
 {¶ 30} Because the term "you" as used in the medical payments coverage form includes individual employees, the term "insured" includes family members of employees, while occupying or, while a pedestrian, when struck by, any auto. Therefore, the decedent was insured under the medical payments coverage.
B. Integrated Risk Policy
1. Was Federal Obligated to Offer UM/UIM Coverage?
 {¶ 31} Federal next urges that the common pleas court erred by finding that Federal was required to offer UM/UIM coverage under the integrated risk policy. The common pleas court concluded that the integrated risk policy broadened coverage under the business auto policy. Therefore, the court held, Federal was required to offer UM/UIM coverage, and its failure to do so resulted in the inclusion of such coverage as a matter of law.
 {¶ 32} Federal argues that the coverages expressly provided by the integrated risk policy do not provide automobile liability coverage, and that the excess coverage afforded to "fronted policies" is only applicable if coverage is otherwise provided by the integrated risk policy. Therefore, Federal claims, it was not obligated to offer UM/UIM coverage under the integrated risk policy.
 {¶ 33} We agree with the common pleas court that Federal was required to offer UM/UIM coverage under the integrated risk policy, and its failure to do so resulted in the inclusion of such coverage as a matter of law, although our reasoning is somewhat different from the common pleas court's. The integrated risk policy is limited to listed coverages. By the policy's terms, Federal agreed to "pay on behalf of or indemnify the Insured for all sums * * * as a result of or in connection with a Loss anywhere, which falls under any of the following coverages." Some ten coverages are then listed. Thus, the policy is limited to the listed coverages.
 {¶ 34} The integrated risk policy operates as excess coverage over the business auto policy, but only to the extent that the coverages provided under the two policies coincide. The integrated risk policy specifically states that "[t]his policy will drop down and provide broader coverages as provided under this policy over the fronted policies and the fronted policies will be subject to the Limit of Liability of this policy." This provision clearly means that the integrated risk policy provides excess insurance over and above the business auto and other "fronted" policies if the integrated risk policy would cover the same loss. Thus, we must examine whether the integrated risk policy includes automobile liability coverage.
 {¶ 35} One of the listed coverages in the integrated risk policy is "third-party liability." Third-party liability is defined to include liability of the insured arising out of the use, possession or ownership of an automobile. Therefore, the integrated risk policy is an automobile liability insurance policy upon which the insurer was required to offer UM/UIM coverage. See R.C. 3937.18(A) and (L) (as in effect at the time the policy issued).
 {¶ 36} Federal concededly did not offer UM/UIM coverage under the integrated risk policy, and therefore, coverage is provided by operation of law.
2. Was Plaintiff an Insured Under the Integrated Risk Policy?
 {¶ 37} Federal further contends that the court erred by finding that plaintiff was an insured under the Integrated Risk Policy, entitled to claim benefits under the UM/UIM coverage. The policy defines insureds to include employees of National City and its subsidiaries "in respects their employment." The Ohio Supreme Court has held that an excess policy's restriction of coverage to employees acting within the scope of their employment is intended to apply only to excess liability coverage, and not for purposes of UM/UIM coverage provided by operation of law.Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660,666. Therefore, we agree with the common pleas court that plaintiff is an insured entitled to UM/UIM benefits under the Integrated Risks Policy.
 {¶ 38} Federal attempts to distinguish Scott-Pontzer by asserting that the policy there was a "follow form" to the business auto policy, while the policy here is not. However, the fact that the umbrella policy in Scott-Pontzer had its own definition of an "insured" which differed from the business auto policy's definition, belies this argument. In our view, the critical factor in Scott-Pontzer is that UM/UIM coverage is intended to protect people, and therefore coverage of employees must be inferred when UM/UIM coverage is imposed by operation of law.
 {¶ 39} Accordingly, we overrule Federal's second assignment of error and affirm the common pleas court's determination that the integrated risks policy provided UM/UIM coverage to plaintiff by operation of law.
3. Was Plaintiff's Decedent an Insured Under the Policy?
 {¶ 40} In her cross-appeal, Plaintiff argues that the court erred by finding that the decedent was not an insured under the integrated risks policy. She contends that, because coverage is imposed by operation of law, family members as well as employees should be considered covered. We disagree. When UM/UIM coverage is imposed by operation of law on a corporate policy, the statutory purpose to protect persons requires that the definition of who is an insured should include people, specifically, employees of the corporation. Scott-Pontzer,85 Ohio St.3d at 664. However, neither logic nor the policy underlying UM/UIM coverage requires that UM/UIM coverage be extended to family members of employees absent some policy language extending the definition of insured persons to family members. There was no such language in the integrated risks policy.
 {¶ 41} Alternatively, appellant asserts that the decedent should be considered an insured under the integrated risks policy because this policy is an umbrella policy providing excess coverage over the business auto policy, and the decedent was an insured under the business auto policy. We have previously found that the integrated risks policy is not an umbrella policy, but is restricted to listed coverages. It contains its own definitions and terms, and does not merely follow the business auto policy. Therefore, we reject this argument.
 {¶ 42} We agree with the common pleas court that the definition of an "insured" under the integrated risks policy does not include family members of employees. Therefore, we overrule the first assignment of error in plaintiff's cross-appeal.
C. General Liability Policy.
 {¶ 43} Plaintiff's second assignment of error on cross-appeal contends that the common pleas court erred by holding that the general liability policy is not an automobile liability policy as to which Federal was required to offer UM/UIM coverage. The general liability policy specifically excludes coverage for injury "arising out of the ownership, maintenance, use or entrustment to others of any" auto which the insured owns or operates, but provides that this exclusion does not apply to "liability for any insured arising out of the parking of an auto on or next to your premises; provided such auto is not owned by, rented or loaned to such insured." Plaintiff urges that this exception to the exclusion creates automobile liability coverage. Therefore, plaintiff claims, Federal was required to offer UM/UIM coverage and its failure to do so resulted in the imposition of such coverage as a matter of law.
 {¶ 44} We agree with the common pleas court that the coverage afforded by this exception to the exclusion from coverage does not meet the statutory definition of "automobile liability or motor vehicle liability policy of insurance" under R.C. 3937.18(L), as amended by Am. Sub. HB 261. The statute defines such policies as, e.g., "[a]ny policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance."[3] "Proof of financial responsibility" means "proof of ability to respond in damages for liability "arising out of the ownership, maintenance or use of a motor vehicle * * *."
 {¶ 45} The coverage afforded by the exception to the exclusion does not apply to such liability, so this policy could not serve as proof of financial responsibility. Therefore, it is not an automobile liability or motor vehicle liability insurance policy as to which UM/UIM coverage had to be offered.
Conclusion
 {¶ 46} For the foregoing reasons, we find a genuine issue of material fact precluded summary judgment for the plaintiff on the question whether National City rejected UM/UIM coverage under the business auto policy before the occurrence at issue. Therefore, we reverse and remand for further proceedings on this issue. However, we affirm the court's determination that UM/UIM coverage was provided by operation of law under the integrated risk policy, and that the general liability policy was not an automobile policy as to which Federal was required to offer UM/UIM coverage. Accordingly, we affirm in part, reverse in part and remand for further proceedings.
Frank D. Celebrezze, Jr., J. Concurs Sean C. Gallagher, J. Concurs inpart and Dissents in part with separate Concurring and Dissentingopinion.
*Sitting by Assignment, Judge James D. Sweeney, retired, of the Eighth District Court of Appeals.
[1] S.B. 97 has since superceded Linko and Gyori.
[2] With respect to the timing of the rejection, it may be significant that the endorsement for the return of premiums from rejected UM/UIM coverage is dated October 24, 2000, more than two years after the coverage was allegedly rejected by Hagman, and several months after the occurrence at issue.
[3] The statute also includes umbrella policies of insurance as automobile liability or motor vehicle liability policies. The general liability policy is clearly not an umbrella policy, however.